967 F.2d 1179
 SPECIALTY RESTAURANTS CORPORATION, Appellant,
v.
James D. BUCHER, P.E.; Shelby K. Willis, P.E.; William R.
Ratliff, P.E.; G. Harold Lamfers, P.E.; Kay C. Bloom,
P.E.; Stephen L. Jennings, P.E.; Raymond E. Lamfers, P.E.;
Raymond L. Voskamp, Jr., P.E.; James Ray Flemons, P.E.;
Jon H. Meulengracht, A.I.C.P.; Jimmy H.C. Lin, P.E.; James
R. Swanson, P.E.; Steve D. Carr, P.E.; R. David Miller,
P.E.; all of the above defendants d/b/a Bucher, Willis, &
Ratliff Consulting Engineers, Planners & Architects, a
Partnership, Appellees.
 No. 91-3468.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 15, 1992.
Decided June 16, 1992.
 
 Gordon R. Gaebler, Kansas City, Mo., argued, for appellant.
 Eric T. Swanson, Kansas City, Mo., argued (Theresa Shean Hall, on brief), for appellees.
 Before JOHN R. GIBSON, Circuit Judge, PECK,* Senior Circuit Judge, and BEAM, Circuit Judge.
 JOHN W. PECK, Senior Circuit Judge.
 
 
 1
 Plaintiff-Appellant Specialty Restaurants Corporation (SRC) appeals from the district court's grant of summary judgment to Defendants-Appellees James D. Bucher and others of the engineering partnership, Bucher & Willis (Bucher). The district court granted summary judgment based on SRC's failure to file a complaint within the time required by Mo.Rev.Stat § 516.120. For the reasons that follow, we affirm.
 
 I. FACTS
 
 2
 From April through August 1977 Bucher provided engineering services to SRC for real estate in the Cambridge Terraces subdivision in Kansas City, Missouri; SRC subsequently built the Baby Doe restaurant on this land. Bucher examined and provided information on the subsurface conditions of the real estate at the site of the Baby Doe restaurant. Bucher provided the information to enable a structural engineer to design a foundation for the restaurant.
 
 
 3
 SRC subsequently hired other engineers, such as Norton & Schmidt Consulting (N. & S.), and hired contractors to begin construction of the Baby Doe restaurant in late 1979 or early 1980. In April 1980, N. & S. and the project's architect determined that the restaurant's foundation did not meet the requirements of the construction documents. SRC decided to work around the problems with the foundation; SRC directed N. & S. to monitor and make corrections for the slight movements in the restaurant's foundation from April 1980 until July 1985.
 
 
 4
 The Baby Doe restaurant opened for business in August 1980 and operated until August 1985. On August 1, 1985 the earth moved under the restaurant and substantially damaged the Baby Doe's foundation. The restaurant closed and never re-opened.
 
 
 5
 SRC filed this diversity action for professional negligence (malpractice) against Bucher on October 25, 1990. On September 27, 1991 the district court granted summary judgment to the defendants; the court concluded that SRC's claim was barred by the applicable statute of limitations--Mo.Rev.Stat. § 516.120. SRC appeals the district's court's decision.
 
 II. ANALYSIS
 
 6
 This Court reviews a grant of summary judgment de novo. United States ex rel. Glass v. Medtronic, Inc., 957 F.2d 605, 607 (8th Cir.1992). In ruling on statute of limitations issues in a diversity action, this Court applies the law of the forum. Guaranty Trust Co. of New York v. York, 326 U.S. 99, 109-110, 65 S.Ct. 1464, 1470-1471, 89 L.Ed. 2079 (1945). The parties agree that Missouri law governs this case. They do not agree on the applicable statute of limitations, however.
 
 
 7
 A. Section 516.120 is the applicable statute of limitations.
 
 
 8
 SRC argues that its complaint alleges engineering malpractice which is controlled not by the five-year statute of limitations for general negligence claims, Mo.Rev.Stat. § 516.120, but by a special, ten-year Missouri statute of limitations for claims against engineers--Mo.Rev.Stat. § 516.097.[1]
 
 
 9
 Bucher argues that Mo.Rev.Stat. § 516.120 is the statute of limitations applicable to claims of professional negligence asserted against architects and engineers. He contends that the applicability of section 516.120 was not affected by the Missouri legislature's adoption of Mo.Rev.Stat. § 516.097 in 1976. Bucher asserts that Missouri law provides for a two-prong analysis concerning the limitations period with respect to claims of professional negligence asserted against architects and engineers. Bucher argues that under this two-prong analysis, in order for a suit to survive summary judgment a court must determine that: 1) the plaintiff has prosecuted his claim against a design professional within five years after accrual of the cause of action, and that 2) the plaintiff has not brought his claim more than ten years after improvements to real estate have been completed. We agree.
 
 
 10
 In a recent opinion upholding the constitutionality of section 516.097, the Missouri Supreme Court concluded that this section did not conflict with section 516.120. Blaske v. Smith & Entzeroth, Inc., 821 S.W.2d 822 (Mo.1991) (en banc). In that decision, the court opined that notwithstanding section 516.097, section 516.120 indicates that a plaintiff must bring a suit for negligence against architects and engineers within five years of accrual of the cause of action. Blaske, 821 S.W.2d at 835. The court in Blaske noted that section 516.097 is a statute of repose not a statute of limitations. Id. A statute of repose bars plaintiffs from bringing suits after a specified number of years after the occurrence of a particular event without regard to the date of accrual of the cause of action. See Magee v. Blue Ridge Professional Bldg. Co., Inc., 821 S.W.2d 839, 845 n. 3 (Mo.1991) (en banc). Consequently, we hold that Mo.Rev.Stat. § 516.120 is the statute of limitations applicable to the instant case.
 
 
 11
 B. The limitations period began running on August 1, 1985.
 
 
 12
 The five-year statute of limitations period specified in section 516.120 begins to run when the cause of action accrues. Mo.Rev.Stat. § 516.100. According to this statute, the cause of action accrues when the damage resulting from a breach of contract or duty is sustained and capable of ascertainment.
 
 
 13
 SRC concedes that the Baby Doe restaurant sustained substantial damage due to the movement of earth under the restaurant on August 1, 1985. SRC argues, however, that from August 1, 1985 until July 1986 the company was investigating the nature and extent of the damage in an effort to take corrective measures and make repairs. In July 1986, SRC contends it became aware that repairs could not be accomplished and that the entire structure had to be demolished. SRC asserts that it did not have knowledge of the cause and extent of the damage until at least July 1986. Thus, SRC argues that it was not capable of ascertaining the damage caused by the movement of the earth on August 1, 1985 until July 1986. SRC contends that the district court ignored the fact that the plaintiff could not have known the cause of the damage until the investigation was finished. SRC argues that the district court erred in determining that in order to begin tolling the statute of limitations, knowledge of the cause of the damage was not required. SRC asserts that the statute of limitations did not begin to run until at least July 1986. Thus, SRC argues it filed a timely complaint on October 25, 1990.
 
 
 14
 Bucher argues that the phrase "capable of ascertainment" in Mo.Rev.Stat. § 516.100 refers to the time when the plaintiff knows or should know that damage has been sustained rather than the time when the plaintiff becomes aware of the precise amount of the damage. See King v. Nashua Corp., 763 F.2d 332, 333 (8th Cir.1985); Jepson v. Stubbs, 555 S.W.2d 307, 312-313 (Mo.1977) (en banc).
 
 
 15
 The court in King noted that except in exceptional cases Missouri decisions emphasize that a cause of action accrues when the injury to the plaintiff is manifested. King, 763 F.2d at 333. In that decision the court cited as an exceptional case Renfroe v. Eli Lilly & Co., 686 F.2d 642 (8th Cir.1982). In Renfroe, the court concluded that the chain of causation was attenuated. The plaintiffs' mothers had taken diethylstilbestrol (DES) while pregnant. The plaintiffs desired to demonstrate at trial that the cervical cancers they developed were linked to their mothers' DES use while they were pregnant with the plaintiffs. The court in Renfroe concluded that it would be unfair to hold that the cause of action accrued when the cancers first manifested because at that time the medical community had not yet established the link between a mother's DES use during pregnancy and her daughter's subsequent development of cervical cancer. Renfroe, 686 F.2d at 647. The court held that the Missouri statute of limitations did not begin to run at the time the injury was discovered if at that time the plaintiff could not know the likely cause of her injury. Renfroe, 686 F.2d at 647-648; see also Krug v. Sterling Drug, Inc., 416 S.W.2d 143 (Mo.1967).
 
 
 16
 We conclude that the case sub judice does not present a situation analogous to the situation in Renfroe or to the situations in any of the cases cited by SRC. In the late 1970s Bucher provided engineering services to SRC to enable a structural engineer to design a foundation for the Baby Doe restaurant. SRC subsequently hired N. & S. as engineers; SRC hired contractors to build the Baby Doe. N. & S. and the architect for the Baby Doe discovered that the restaurant's foundation did not meet the requirements of the construction documents. Between 1980 and 1985, SRC directed N. & S. to monitor and make corrections for the slight movements of the earth which had disturbed the Baby Doe's foundation. On August 1, 1985 the earth's movement was dramatic and substantially damaged the restaurant's foundation. We conclude that the chain of causation was not so attenuated that it was impossible for SRC to ascertain the likely cause of injury on August 1, 1985. Accordingly, we hold that the cause of action accrued on that date.
 
 
 17
 Furthermore, we find support for our position in Arst v. Max Barken, Inc., 655 S.W.2d 845, 847 (Mo.Ct.App.1983). In that case, a Missouri Court of Appeals noted that the appellants discovered cracks and noticed shifting of their foundation in August 1969, yet they neglected to employ an expert to ascertain the nature of their damages until August 1979. In Arst, soil engineers came to different conclusions about the exact causes of the cracking. Nevertheless, the court held that the appellants were capable of ascertaining their cause of action in August 1969 and that the statute of limitations began to run at that time.
 
 III. CONCLUSION
 
 18
 We do not address the issue of whether the statute of limitations began to run before August 1, 1985. On August 1, 1985, however, the Baby Doe restaurant suffered damage of sufficient gravity to force the building to be closed. We agree with the district court's conclusion that on August 1, 1985 SRC had sustained and was capable of ascertaining the damage according to Mo.Rev.Stat. § 516.100. We hold that the earth movement on that date started the running of the statute of limitations. Mo.Rev.Stat. § 516.120. Consequently, SRC's complaint, filed on October 25, 1990, was untimely. Accordingly, we AFFIRM the district court's grant of summary judgment to Bucher.
 
 
 
 *
 The HONORABLE JOHN W. PECK, Senior United States Circuit Judge for the Sixth Circuit Court of Appeals, sitting by designation
 
 
 [1]
 The relevant sections of Mo.Rev.Stat. § 516.097 read as follows:
 Tort action against architects, engineers or builders of defective improvement to real property must be brought within ten years of completion of improvement, exceptions
 
 
 [1]
 Any action to recover damages for personal injury, property damage or wrongful death arising out of a defective or unsafe condition of any improvement to real property, including any action for contribution or indemnity for damages sustained on account of the defect or unsafe condition, shall be commenced within ten years of the date on which any such improvement is completed
 
 
 [2]
 This section shall only apply to actions against any person whose sole connection with the improvement is performing or furnishing, in whole or in part, the design, planning or construction, including architectural, engineering or construction services, of the improvement
 
 
 [4]
 This section shall not apply if:
 (1) An action is barred by another provision of law;
 (2) A person conceals any defect or deficiency in the design, planning or construction, including architectural, engineering or construction services, in an improvement for real property, if the defect or deficiency so concealed directly results in the defective or unsafe condition for which the action is brought;
 (3) The action is brought against any owner or possessor of real estate or improvements thereon....